**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NO. 1:09 CR 386** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Steven G. Barkus, et al.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the Motion to Dismiss Superseding Indictment Due to Improper Venue, Improper Grand Jury Selection, and Failure to Charge an Offense (Doc. 156) and Defendant Lombardo's Motion to Join Defendant Barkus' Motion to Dismiss Superseding Indictment as Set Forth on Docket No. 156 (Doc. 162). Also pending is the Motion for Disclosure of Grand Jury Selection Materials (Doc. 157) and Defendant Lombardo's Motion to Join Defendant Barkus' Motion for Grand Jury Selection Material as Set Forth on Docket No. 157 (Doc. 163). For the reasons that follow, the motions to join (Docs. 162 and 163) are GRANTED. The motion to dismiss and the motion for grand jury selection materials are

1

DENIED.

## **ANALYSIS**

1. Venue

Defendants move to dismiss the indictment on the grounds of improper venue. According to defendants, venue is improper with respect to all counts and, as such, dismissal is warranted. The government responds claiming that all counts are properly venued in this district. The Court will address each count in turn.

A. Counts 1 through 6 (fraud)

Defendants argue that with regard to mail and wire fraud, venue is proper in California because the only connection between defendants and the State of Ohio is attorney Helfgott. Neither defendant traveled to this district during the time period at issue. According to defendants, Helfgott was simply a "financial clerk or banker." Defendants argue that the government "has not and cannot allege that there was a specific agreement with Helfgott for anything other than to serve as a corporate counsel and to perform administrative services." Defendant Barkus goes on to challenge the government's characterization of payments made to and from Helfgott's IOLTA. According to Barkus:

> The Superseding Indictment makes a huge leap–indeed, an implausible leap– in assuming that because Helfgott paid some of Barkus' expenses (primarily while Barkus was out of town), Helfgott was acting as Barkus' counsel–in some way connecting the two together in a conspiracy.

In response, the government points out that Helfgott is alleged to be defendants' co-conspirator. Moreover, the superseding indictment sets forth a number of overt acts, including the following:

> On or about August 15, 2003, Stephen I. Helfgott, at the direction of defendants

2

> MICHAEL A. LOBMARDO and STEVEN G. BARKUS, approached a friend who was an attorney in Cleveland, Ohio, (hereinafter referred to as the "Cleveland Attorney") and asked the Cleveland Attorney to contact a friend and classmate of the Cleveland Attorney who was a businessman in Louisiana (referred to as S.R.) so that Helfgott could arrange to present an investment offering concerning a purported construction development in Indonesia, involving defendants STEVEN G. BARKUS, MICHAEL A. LOMBARDO, and a third party, P.M., to this potential Louisiana investor.
>
> On or about August 15, 2003, Steven I. Helfgott contacted the above mentioned Louisiana investor, S.R. to induce him to invest in a purported construction project, and falsely promised this investor that this would be a safe investment with a high rate of return.
>
> On or about August 15, 2003, Steven I. Helfgott received a wire transfer in the amount of approximately $60,000.00 into his IOLTA account, in Cleveland, Ohio, from S.R.
>
> Sometime after November 13, 2003, Steven I. Helfgott received a telephone call from the above-mentioned Louisiana investor who was complaining that he did not receive any principal or interest payments as promised. Helfgott assured the investor that his investment was safe and directed him to defendant STEVEN G. BARKUS.
>
> From on or about July 30, 2004 to on or about August, 2004, Steven I. Helfgott, on behalf of defendant, STEVEN G. BARKUS, solicited J.B. to invest a total of $70,000 in a new venture which would pay a high rate of return; in fact defendants and Helfgott used J.B.'s investment to make a payment of $30,000 to investor S.R., who was threatening legal action.
>
> On or about August 15, 2003, Steven I. Helfgott wire transferred approximately $25,000.00 from his IOLTA account, in Cleveland, Ohio, to a bank for the benefit of P.M.
>
> On or about September 2, 2003, Steven I. Helfgott wire transferred $17,000.00 from his IOLTA account, in Cleveland, Ohio, to the Mellon Bank, in Pisttsburgh, Pennsylvania, payable to Option One Mortgage to make a payment on defendant STEVEN G. BARKUS's, condominium in Boston, Massachusetts.

(Doc. 5 at pp. 9-10, ¶¶ 24-30).

The government points out that Helfgott pleaded guilty for his role in the conspiracy. According to the government, the indictment alleges misconduct of a continuing nature, which was either "begun in one district and completed in another, or committed in more than one

3

district." As such, venue is proper "in any district in which such offense was begun, continued, or completed." With regard to conspiracy charges, the government argues that venue is proper in any district where the conspiracy was formed or an overt act occurred.

Count one charges conspiracy to commit mail and wire fraud. The Court rejects defendants' argument that venue is improper in this district. As noted by the Sixth Circuit:

> Congress has provided that:
>
> [A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of or prosecuted in any district in which such offense was begun, continued or completed. 18 U.S.C. § 3237(a).
>
> Furthermore, venue is proper in conspiracy prosecutions in any district where the conspiracy was formed or in any district where an overt act in furtherance of the conspiracy was performed. A conspiracy defendant need not have entered the district so long as this standard is met.

*United States v. Scaife*, 749 F.2d 338 (6th Cir. 1984).

The Court finds that the superseding indictment alleges that overt acts committed in furtherance of the conspiracy were performed in this district. As cited by the government, the superseding indictment alleges that defendants and Helfgott conspired to commit mail and wire fraud by wiring funds in and out of Helfgott's IOLTA account. (Doc. 5 at p.4, ¶10). The government alleges that investors wired monies into the account and Helfgott wired monies out of the account for the benefit of defendants. *Id*. Accordingly, venue is proper in this district. Defendants' argument that Helfgott was simply a "financial clerk or banker," is of no moment. As an initial matter, Helfgott pleaded guilty to his role in the conspiracy. Moreover, defendants fail to cite any law suggesting that the actions taken by a "financial clerk or banker" cannot be considered overt acts. Thus, the Court rejects defendants' argument that venue is improper with respect to the conspiracy charge.

4

Count two charges defendants with wire fraud. According to the superseding indictment, defendants "transmitted or caused to be transmitted, by means of wire..communication..., to wit, a bank wire transfer in the amount of approximately $10,710 from investor J.L., sent from a coin dealer in Maryland to Steven Helfgott's IOLTA accounts in Cleveland, Ohio." (Doc. 5 at p 14). Similarly, counts three and four allege mail fraud. Specifically, the government alleges that investors mailed checks into Helfgott's IOLTA account in this district.

Wire and mail fraud are continuing offenses under 18 U.S.C. § 3237, and may be prosecuted "in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237. Defendants present no cogent argument with regard to counts two through four. Rather, it appears that defendants attempt to explain the charged conduct and provide an alternative explanation for the "investments." Defendants also continue to argue that Helfgott performed "only ministerial tasks," and, therefore, venue is not proper. These arguments are rejected. This Court already determined that Helfgott's allegedly "ministerial" role in the alleged conspiracy does not mean that venue is improper. Moreover, the Court rejects defendants' alternative explanation for the charged conduct. Those arguments are appropriately raised at trial, not in a pretrial motion to dismiss for improper venue.

Venue as to count five is also proper. In this count, the government charges defendants with securities fraud. The count expressly incorporates many of the allegations set forth in count one, which this Court has already determined is properly brought in this district.

Count six is a claim for conspiracy to defraud the United States of tax revenue. According to defendants, the superseding indictment fails because the conspiracy is "nonexistent" since Helfgott "merely acted as a financial clerk or banker," and because the

5

government does not allege how the holding of funds in Helfgott's IOLTA account "constitutes the intent to deceive." According to defendants, the funds may have been loans. Defendants claim that the allegations do not meet the minimum pleading standards and, as such, there are "no facts establishing venue."

Upon review, the Court rejects defendants' arguments. As set forth above, the Court will not ignore Helfgott's alleged involvement in analyzing venue. Moreover, the superseding indictment expressly alleges that defendants deposited funds into Helfgott's IOLTA account in Ohio and caused Helfgott to withdraw those funds for their personal use all in order to impede and impair the I.R.S. from correctly determining defendants' tax liability. As this is a conspiracy charge, the Court finds that because the government alleges overt acts occurring in this district, the Court finds that venue is proper here.

B. Counts 7-15

Counts seven through fifteen allege tax evasion in violation of 26 U.S.C. § 7201. Defendants argue that the counts alleging "failure to file" may only be brought in the district in which the taxpayer is required to file forms. As defendants were not required to file forms in Ohio, venue is improper. With regard to those counts alleging "filing false returns," venue is proper in any district in which an act in furtherance of the crime was committed. According to defendants, they conducted all of their business outside of Ohio. The government responds by claiming that the use of Helfgott's IOLTA account in this district operates to "continue" the charges of tax evasion. In essence, the government argues that defendants used an IOLTA account in this district to hide income. The government also claims that defendants incorrectly argue that "failure to file" claims must be brought in the district in which the taxpayer resides.

6

According to the government, the law relied on by defendants addresses failure to file claims asserted under 26 U.S.C. § 7203. In this case, all of the charged conduct is alleged to violate 26 U.S.C. § 7201, *i.e.*, the tax *evasion* statute.

This Court finds that tax evasion charges constitute "continuing offenses" under 18 U.S.C. § 3237. *See*, *United States v. Root*, 585 F.3d 145 (3d Cir. 2009). "An offense against the United States that spans multiple districts 'may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed'." *Id*. *(Citing*, 18 U.S.C. § 3237(a)). "The locality of a crime for the purpose of venue extends "'over the whole area through which force propelled by an offender operates.'" *Id. (Citing United States v. Johnson*, 323 U.S. 273, 275, 65 S.Ct. 249, 89 L.Ed. 236 (1944)).[1]

26 U.S.C. 7201 provides:

Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

This Court finds that venue is proper in this district because the government alleges that defendants utilized Helfgott's IOLTA account in an effort to evade the payment of taxes. Thus, while the returns may not have been signed or prepared in this district, the IOLTA account was a "manner" allegedly used by defendants to violate Section 7201. *See, e.g.*, *Spies v. United States*,

---

[1] The government correctly notes that *United States v. Garman*, 748 F.2d 218 (4th Cir. 1984), *i.e.*, the case relied on by defendants for the proposition that "failure to file" charges must be brought in the district in which the defendant resides, involves a different statute than the one at issue in this case. As such, the Court does not find *Garman* to be on point.

317 U.S. 492 (although not addressing venue, noting that tax evasion may result from evidence of the "concealment of assets or covering up sources of income"). *See also, U.S. v. Strawberry*, 892 F.Supp. 519 (S.D.N.Y.,1995)(receipt of cash in district with intent to evade is sufficient to establish venue even if returns not prepared or filed in that district).[2]

    2.      Grand jury selection

Defendants argue that the grand jury selection process in this case warrants dismissal of the indictment. According to defendants, venue lies only in California and the exclusion of California residents from the grand jury pool violates the Constitution. In response, the government points out that challenges based on the grand jury selection process must be made before voir dire or within seven days after the "defendant discovered or could have discovered" the basis for the challenge, whichever is earlier. The government further points out that venue is proper and, therefore, defendants' challenge must be denied. Otherwise, no case could ever be brought outside of the district where the defendant resides.

Upon review, the Court rejects defendants' challenge to the grand jury selection process. The Court agrees with the government that defendants' challenge is untimely. Pursuant to 28 U.S.C. 1867, challenges to the grand jury compliance and selection procedures must be made "before the voir dire examination begins, or within seven days after the defendant discovered or

---

[2] Although not argued by defendants, the government points out that Section 3237(b) provides the defendant with a right to elect to be tried in the resident district for charges brought under Section 7201 and based "solely on a mailing." The government goes on to argue that Count 13 is not based "solely on a mailing," and further notes that defendants did not file a motion to transfer venue within twenty days of the superseding indictment, as required by the statute. The Court need not address this issue as defendants raised no such argument.

could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier...." Defendants knew long ago that they were indicted in Ohio and that the grand jury here would not contain residents from California. Accordingly, defendants' challenge is untimely. In addition, the Court agrees with the government that the exclusion of residents from other jurisdictions does not violate defendants' rights. As set forth above, the Court finds that venue is proper in this district. To accept defendants' argument would prevent any court from trying an out of state defendant. That is simply not the law. Accordingly, defendants' argument is rejected.

Defendants also seek discovery of the grand jury selection materials. As set forth above, defendants' request is untimely under 28 U.S.C. § 1867(a). Moreover, defendants offer no "particularized need" for disclosure of the materials. Accordingly, the request for disclosure is denied.

3. Failure to charge

Defendants argue that the allegations in the superseding indictment are "simply too vague" to establish a conspiracy involving Helfgott. According to defendants, the superseding indictment merely "parrots the language of the statute" without pleading sufficient facts. Defendants again argue that they never entered Ohio. Defendants claim that, although count one discusses "investments," it never defines specific investments. The government responds that the indictment is sufficiently detailed to allow defendants to formulate a response.

Upon review, the Court finds that defendants' motion must be denied. In this Circuit, an indictment states an offense if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and... enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Anderson*, 605

9

F.3d 404, 411 (6th Cir. 2010). In this case, the superseding indictment tracks the language of the relevant statues, and defendants appear to admit as such. In addition, the Court finds that the superseding indictment contains sufficient facts to inform defendants of the charges against them and enable them to plead an acquittal or conviction in bar of future prosecutions for the same offense. Defendants do not make any specific argument with respect to any count other than count one. Upon review, the Court find that count one contains more than sufficient facts and information to meet the standard set forth in *Anderson*. Contrary to defendants' argument, count one sets forth detailed information about the conspiracy charge. Again, the Court finds that Helfgott's role in the conspiracy is sufficiently detailed and the fact that defendants never entered Ohio does not invalidate the indictment. There are 27 paragraphs of overt acts which detail dollar transfers and dates and describe the relationship between the parties. In his reply brief, defendant Barkus provides the Court with twenty-five "questions" that "remain unanswered" after reading the indictment. By way of example, Barkus asks the following:

> 2) What is the exact name(s) of the company or companies that the Grand Jury concluded S.R., J.B., T.H., J.L, B.C., and D.P. "invested in?"
>
> 3) What investment "Offering Material," "Solicitation Material," "Private Placement Memoranda,"or other investment-oriented documentation did the Grand Jury review and thereby conclude that these individual [sic] were indeed "investors?"
>
> 7) Did the Grand Jury verify that these "investors" were logged into a stock or membership register book?
>
> 17) Did the Grand Jury conclude that these "Securities" gained or lost value since "the investors" acquired them, and if so, by how much and by what criteria?
>
> 19) Exactly what is the source of the "income" (of assets) to which the Grand Jury is referring that should have been disclosed to the IRS?
>
> 23) Did the Grand Jury identify any investment or investments that Barkus' family members made?

10

While Barkus might "want answers" to these questions, Barkus offers no law suggesting that the government must provide answers to these questions at all, let alone in the indictment. In all, the Court finds that defendants' arguments must be rejected because the indictment fairly charges offenses.

**CONCLUSION**

For the foregoing reasons, Defendant Lombardo's Motion to Join Defendant Barkus' Motion to Dismiss Superseding Indictment as Set Forth on Docket No. 156 (Doc. 162) and Defendant Lombardo's Motion to Join Defendant Barkus' Motion for Grand Jury Selection Material as Set Forth on Docket No. 157 (Doc. 163) are GRANTED.  The Motion to Dismiss Superseding Indictment Due to Improper Venue, Improper Grand Jury Selection, and Failure to Charge an Offense (Doc. 156) and the Motion for Disclosure of Grand Jury Selection Materials (Doc. 157) are DENIED.

IT IS SO ORDERED.


    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 12/2/11